T.C. Memo. 2000-388



UNITED STATES TAX COURT



SEAGATE TECHNOLOGY, INC., SUCCESSOR IN INTEREST TO SEAGATE
PERIPHERALS, INC., f.k.a. CONNER PERIPHERALS, INC., Petitioner
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15086-98.                    Filed December 22, 2000.



       P, a domestic corporation, entered into a cost-
sharing agreement with its foreign subsidiaries in
connection with certain intangibles that were
transferred to the subsidiaries.  R determined that P
should have included in the cost-sharing pool the cost
of stock options for P's employees who performed the
research and development regarding the intangibles.
Where there is a bona fide cost-sharing arrangement, R
may make allocations only "to reflect each
participant's arm's-length share of the cost of the
risks of developing the property."  Sec. 1.482-2(d)(4),
Income Tax Regs.  P contends that R is limited to
making allocations only where R is aware of actual
arm's-length circumstances where the cost of stock
options is shared.  P also contends that for purposes
of summary judgment, R's reliance on an expert's
opinion is not a "fact" for purposes of deciding
whether the parties have a genuine dispute about a
material fact.

Held: Under the regulations, R is not required to be aware of arm's-length circumstances as a prerequisite to the making of a determination allocating a cost in connection with a sharing agreement. Held further: Petitioner has not shown that there is no genuine issue of material fact.

Mark A. Oates, Thomas V.M. Linguanti, John M. Peterson, Jr., Mary E. Wynn, and Andrew P. Crousore, for petitioner.

Debra K. Estrem, Jeffrey A. Hatfield, Michael J. Cooper, Bryce A. Kranzthor, Ewan D. Purkiss, and Mark S. Heroux, for respondent.

MEMORANDUM OPINION

GERBER, Judge: Petitioner moved for partial summary judgment[1] concerning what has been denominated the "section 482[2] stock option cost-sharing issue". In particular, petitioner questions whether respondent may employ section 482 to make an

___

[1] Petitioner has filed two motions for partial summary judgment. This opinion addresses the issue that the parties have denominated the "section 482 stock option cost-sharing issue". The other summary judgment motion involves what has been denominated the "Read-Rite issue", addressing whether the "relation back doctrine" established in Arrowsmith v. Commissioner, 344 U.S. 6 (1952), applies in characterizing petitioner's gain on the sale of stock for purposes of sec. 954. See Seagate Technology, Inc. v. Commissioner, T.C. Memo. 2000-361.

[2] All section references are to the Internal Revenue Code in effect for the 1990, 1991, and 1992 tax years, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

allocation to include petitioner's cost, if any, of employee stock options in the cost-sharing pool for purposes of a cost-sharing agreement between petitioner and its foreign subsidiaries.

In support of its motion, petitioner argues that, as a matter of law, respondent is prohibited from making an allocation with respect to the cost-sharing arrangement for the following reasons: (1) Respondent is not aware of specific arm's-length dealings where stock option costs were shared; (2) respondent relies on opinion as opposed to factual support for inclusion of the "at-the-money" stock options[3] in the pool of costs; (3) section 1.482-2(b)(5)(ii), Income Tax Regs., excludes "expenses associated with the issuance of stock"; and (4) petitioner allocated and apportioned the costs of nonintegral support services consistently using a reasonable method in keeping with sound accounting practices within the meaning of section 1.482-2(b)(6)(i), Income Tax Regs.

---

[3] An "at-the-money" stock option is issued at an exercise price pegged to the market value on the issue date. Accordingly, if the market value of the stock remains at the option issue price or lower, the option will not be exercised. Conversely, if the market price exceeds the option issue price, the option would more likely be exercised.

Respondent counters that: (1) Section 1.482-2(d)(4)[4] and (b)(4), Income Tax Regs., requires that "all costs" be included in cost-sharing arrangements, and "all costs" include employee stock options; and (2) there are disputed material facts concerning whether arm's-length parties would share the cost of stock options granted to employees who performed the research and development for the transferred intangible.

## Background

Petitioner is the successor in interest to Conner Peripherals, Inc. (Conner Domestic), which developed and manufactured hard disk drives for sale to personal computer manufacturers and others. Effective January 1, 1988, Conner Domestic and its wholly owned foreign manufacturing subsidiary, Conner Peripherals Singapore, Ltd. (Conner Foreign 1), entered into a cost-sharing agreement. Effective July 1, 1990, Conner Domestic, Conner Foreign 1, and Conner Domestic's wholly owned Singapore corporation, Conner Peripherals Pte., Ltd., entered into a new cost-sharing agreement for sharing research and development (R&D) costs, and the 1988 cost-sharing agreement was

---

[4] Sec. 1.482-2(d), Income Tax Regs., was amended in 1993, and respondent refers to the amended version (sec. 1.482-2A(d), Income Tax Regs.) in his materials. Petitioner, on the other hand, refers to the unamended version. While the years we consider predate the amendment, the amended version, to the extent pertinent here, has not been changed. Accordingly, the references used by the parties are interchangeable.

terminated. Pursuant to the new agreement, the three corporations shared $62.9 million, $85 million, and $94.7 million of R&D costs for the development of a new generation of disk drives for 1990, 1991, and 1992, respectively.

In connection with an audit, respondent challenged certain of the allocations under the cost-sharing agreement. Agreement was reached with respect to all determined allocations with the exception of respondent's determination that the value or cost of stock options granted to Conner Domestic's employees had to be included in the cost-sharing pool. Petitioner contended that arm's-length parties would not share the cost, if any, of employee stock options, and respondent was not aware of any arm's-length cost-sharing arrangement where the parties shared the cost incurred with respect to the grant of an at-the-money stock option to the employees of one of the parties.

## Discussion

Summary judgment is an appropriate means by which to decide a legal issue if the pleadings, admissions, and other materials, including affidavits, demonstrate that no genuine issue exists as to any material fact and a decision may be rendered as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Summary judgment is a device used to expedite litigation, but it is not a substitute for a trial in that disputes over factual issues are

not to be resolved in such proceedings. See <u>Espinoza v. Commissioner</u>, 78 T.C. 412, 415-416 (1982); <u>Shiosaki v. Commissioner</u>, 61 T.C. 861 (1974). The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. See <u>Shiosaki v. Commissioner</u>, <u>supra</u>.

The dispute here concerns a cross-border transfer of intangibles by a domestic parent to its foreign subsidiaries. Under the regulations in effect for the years under consideration, if a group of controlled entities participated in a "bona fide cost-sharing arrangement" as to the development of intangibles, then the district director is limited in his approach to reallocation. Sec. 1.482-2(d)(4), Income Tax Regs. In particular, the regulation provides that if there is a "bona fide cost-sharing arrangement", then "the district director shall not make allocations with respect to such acquisition [of intangibles] except as may be appropriate to reflect each participant's arm's length share of the costs and risks of developing the property." <u>Id.</u>

The regulation goes on to direct that cost-sharing arrangements will be considered "arm's length" where the "terms and conditions * * * [are] comparable to those which would have been adopted by unrelated parties similarly situated had they entered into such an arrangement." <u>Id.</u> There is no disagreement about the bona fides of the cost-sharing agreements between the

controlled entities in this case. Respondent and petitioner have also resolved their differences regarding several other reallocations determined by respondent. The only question presented is whether the controlled entities must share the cost, if any, of the domestic parent's stock options given to the parent's employees who performed research and development regarding particular intangibles.

Petitioner argues that where a bona fide cost-sharing arrangement exists, section 1.482-2(d)(4), Income Tax Regs., requires respondent to have a factual predicate in order to make any allocations. Petitioner also points out that respondent has admitted that he does not have evidence or knowledge of an actual arm's-length transaction where stock option costs were shared. Respondent, instead, relies on an affidavit containing an expert's opinion that options are part of the costs that would be shared between arm's-length parties. Where a bona fide cost-sharing arrangement exists, petitioner contends that respondent may not rely solely on an expert's opinion as a basis for a stock option cost-sharing allocation. Petitioner also argues that respondent's expert's opinion is unreliable under the standard set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and related cases. Additionally, petitioner contends that even if the expert's opinion was acceptable and/or admissible, it is "opinion" and not "fact" and, therefore, could

not be the basis for a genuine issue as to a material fact so as to preclude the use of summary judgment.

Petitioner contends that it has shown that stock option costs would not be shared in an arm's-length transaction. Petitioner's proof on this point consists of the experiences of its officers and employees, some of whom have worked for or with unrelated third parties. Petitioner also relies on the fact that the Federal Acquisition Regulations System (FARS) classifies qualifying employee stock purchase plans as "noncompensatory." That classification precludes payment by the Federal Government for costs of qualified employee stock options in connection with contracts governed by FARS. Because FARS governs all civil and military Federal executive branch contracts with private business for goods and services, petitioner reasons that a large number of "arm's-length transactions" do not include the cost-sharing of employee stock options.

Respondent counters that the regulations provide that all costs should be included and that stock option costs are "costs" that may be allocated. In addition, respondent relies on an expert's opinion that stock option costs would be accounted for in an arm's-length business relationship. Respondent also relies on what he believes are analogous court opinions in which the stock options have been treated as compensation or as part of the consideration for a transaction. Finally, respondent contends

that the FARS contracts are not comparable to the circumstances in this case.

The parties' disagreement raises several questions about the regulations. Firstly, we must consider whether the Commissioner must be aware of an actual arm's-length transaction before allocating costs between controlled entities that have a bona fide cost-sharing arrangement. Secondly, if an actual arm's-length example is not required, then we must decide whether the Commissioner must possess facts and/or admissible evidence before making such an allocation.[5]

We do not agree with petitioner's perception that respondent would have to be aware of an actual arm's-length transaction as a prerequisite to making any allocations. Section 1.482-2(d)(4), Income Tax Regs., limits the Commissioner's ability to make an allocation, in the case of a bona fide cost-sharing arrangement, to the appropriate reflection of each participant's arm's-length share of the costs and risks of developing the property. The regulation goes on to direct that cost-sharing arrangements will be considered "arm's length" where the "terms and conditions [are] comparable to those which would have been adopted by unrelated parties similarly situated had they entered into such

---

[5] The parties have raised several other factual and/or legal questions that need not be addressed in the setting of this summary judgment motion because of our conclusion that there is a genuine issue as to a material fact.

an arrangement." (Emphasis added.) Accordingly, there is no requirement that the Commissioner have actual knowledge of an arm's-length situation as a prerequisite to the determination of an allocation in the case of a cost-sharing arrangement.

In addition, the regulatory standard does not require that the Commissioner rely on fact, as opposed to opinion, before making an allocation where there is a bona fide cost-sharing arrangement. There is no specific minimum standard prerequisite to the Commissioner's determination that an allocation should be made. Such a determination, however, may ultimately be found to be arbitrary, capricious, or unreasonable, but that standard is not the threshold enabling the Commissioner's determination that an allocation should be made.

We do not conclude that respondent's determination is or is not well founded. Likewise, we do not, in the context of this opinion, accept, agree with, or disagree with respondent's expert's opinion. We must however, observe that for better or for worse, expert witnesses have become the prognosticators and the bane of transfer pricing cases. Both parties may rely on expert advice/opinions in reaching their conclusions and/or defending their positions.

Here we will be engaged in deciding whether the sharing of stock option costs is a circumstance "comparable to those which would have been adopted by unrelated parties". Sec. 1.482-

2(d)(4), Income Tax Regs.  Petitioner, from a limited universe of information, has attempted to show that it is not aware of an arm's-length transaction where the costs of stock options were shared; i.e., that its officers and employees are not aware of any circumstances where costs of stock options have been shared in petitioner's experiences and in those of employees who have experience with other companies.  Through Government FARS contract standards, petitioner has attempted to show that some portion of the potential universe of unrelated (arm's-length) research and development transactions did not involve the sharing of the cost of employee stock options.

In the context of a partial summary judgment motion, we should not undertake the role of a fact finder.  In such a setting, a judge should not engage in credibility determinations, weighing the evidence, or drawing inferences from the "facts" that the moving and nonmoving parties present.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  As significantly, "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., supra at 255; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970); Blanton v. Commissioner, 94 T.C. 491, 494 (1990).

Neither party has advanced evidence or affidavits completely resolving, as a factual matter, the question of whether arm's-length parties to a similar transaction would share the cost of employee stock options. There are also questions about whether the options had any cost to petitioner at the time of issuance and/or the appropriate time to measure the cost of the stock options. Under these circumstances, we are compelled to hold that there is a genuine dispute about material facts. We cannot say that either party has presented or had the opportunity to fully present facts or other evidence adequately addressing, for the benefit of a fact finder, whether the regulatory standard has been met. Accordingly, this matter is not ripe for summary adjudication, and further development and/or a trial may be necessary to resolve the disputed factual aspects of this case.

As to petitioner's argument that there is no genuine dispute about a material fact because respondent relies solely on opinion evidence, we disagree with petitioner's perspective. Petitioner chooses to focus on the means by which respondent may attempt to convince the Court that his determination is well founded and/or that his determination is based on conditions that are comparable to those that would have been adopted by unrelated parties similarly situated had they entered into such an arrangement. Even though an expert's opinion may be hearsay (i.e., not based on the expert's personal knowledge but on his perception of the

operative facts of a case), courts may rely on the expert's affidavits in denying motions for summary judgment.  See <u>Cabrales v. County of Los Angeles</u>, 864 F.2d 1454, 1460 (9th Cir. 1988), vacated and remanded 490 U.S. 1087 (1989); see also <u>Newhouse Broad. Corp. v. Commissioner</u>, T.C. Memo. 2000-270.

As explained above, under the regulations, respondent is not required to present an actual example of an arm's-length transaction where the costs of employee stock options were shared.[6]  Petitioner, if it follows its present approach, will try to show that such costs are not shared by proving a negative; i.e., no transactions where there was cost sharing.  Respondent, on the other hand, if he follows his present approach, will attempt to show by means of expert opinion that such costs would or should be shared within the meaning of the regulations. Obviously, an expert's opinion and/or testimony is generally not admissible as fact because he or she generally renders opinions after the fact.  Nevertheless, experts' opinions are received for the purpose of assisting the trier of fact in reaching a factual conclusion.

Our conclusion that there remains a genuine dispute about a material fact does not presume that respondent's expert(s) is qualified or that the opinion(s) is necessarily helpful or

---

[6] We note, however, that such a showing would be preferred to opinion evidence.

admissible, but that such questions cannot be decided in the context of this summary judgment motion.  Likewise, petitioner's proposed evidence of the nonexistence of such an arm's-length sharing of stock option costs is not being "judged" at this time.

    To reflect the foregoing,

<u>An order will be issued denying petitioner's motion for partial summary judgment regarding the "section 482 stock-option cost-sharing issue"</u>.